ST. PAUL FIRE & MARINE INS. CO. v. CLARK. (No. 1269.)

(Court of Civil Appeals of Texas. Amarillo. Dec. 12, 1917. Rehearing Denied Jan. 9, 1918.)

1. INSURANCE ⬅94 — RATIFICATION OF AGENTS' ACTS.

Where a fire insurance company ratified the acts of its agents and accepted the benefits, it could not deny their agency or avoid the responsibility growing out of it.

2. INSURANCE ⬅648(1)—ACTIONS—EVIDENCE —STATEMENTS OF INSURER'S AGENTS.

In action on fire insurance policy, testimony of assured's wife and attorney as to material statements made by agents of the insurer which had ratified the acts of such agents was admissible.

3. INSURANCE ⬅662(1)—ACTIONS—EVIDENCE —LETTER OF INSURER'S ATTORNEYS.

In action on fire insurance policy, a letter of insurer's attorneys tending to prove that the insured's premium note was deducted from the amount agreed to be due in adjustment of a prior loss on the same policy was admissible.

4. INSURANCE ⬅645(3)—ISSUES AND PROOF.

Under Vernon's Sayles' Ann. Civ. St. 1914, art. 1829, as amended by Acts 34th Leg. c. 101, providing that special defenses shall be regarded as denied unless expressly admitted, where insurer, in action on fire insurance policy, pleaded nonpayment of insured's premium note as avoiding the policy, insured, assuming the burden of proving payment, had the right to prove it under his implied general denial.

5. INSURANCE ⬅230—CANCELLATION—TENDER OF UNEARNED PREMIUMS.

A fire insurance policy could not be canceled without tender of unearned premiums.

6. APPEAL AND ERROR ⬅173(14)—PRESENTATION OF QUESTION BELOW.

Where defendant insurer, in action on fire insurance policy, did not plead insured's failure to make out and furnish proofs of loss, and there was no evidence on the question, it was too late to raise it on appeal.

Error from District Court, Motley County; J. H. Milam, Judge.

Action by W. D. Clark against the St. Paul Fire & Marine Insurance Company. Judgment for plaintiff, and defendant brings error. Affirmed.

---

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

E. G. Senter, of Waco, for plaintiff in error. T. T. Bouldin and G. E. Hamilton, both of Matador, for defendant in error.

HALL, J. Defendant in error filed this suit upon a policy of fire insurance to collect the sum of $1,500 for the loss of his dwelling and $171 for the loss of household goods. It is alleged that the policy was issued March 11, 1914, insuring the dwelling against loss by fire for a period of three years from said date, in the sum of $1,500, and insuring the household and kitchen furniture and wearing apparel in said dwelling in the sum of $300; that on the 15th day of December, 1915, the house and contents were destroyed by fire; that the premium for said three years was fully paid up; that the destruction of the house was complete; that the policy had been taken from plaintiff's possession by one J. R. Meriwether, plaintiff in error's agent, wrongfully and fraudulently, and was then in possession of plaintiff in error. The substance of appellant's special answer is: That plaintiff did not pay the premium stipulated in the policy, but in lieu thereof executed his note payable to the defendant or its order on the 1st day of January, 1915, in the sum of $89. That one of the terms and conditions of said note is as follows:

"This note being given as a consideration for insurance and interest under the above-named policy, I consent that in case of default in payment of same in full when due the policy shall become null and void and so remain until the note is paid."

That said note was not paid by plaintiff at maturity and has never been paid. That no part of the premium payable for the policy was ever paid by plaintiff. That by reason thereof said policy became null and void on the 1st day of January, 1915, and was not in force as an existing contract of insurance at the time of the fire. That the policy sued on contained the following provision and stipulation:

"This policy shall be canceled at any time at the request of the insured or by the company, by giving five days' notice of such cancellation."

That on or about the ——— day of April, 1915, defendant gave notice to plaintiff and to his authorized agent of the cancellation of the policy, and the plaintiff, through his authorized agent, to wit, his wife, Mrs. Pearl Clark, surrendered the policy to the defendant for cancellation and same was duly and legally canceled by the defendant and ceased to exist at said time to be a binding contract of insurance between the parties and was not in force at the time of the fire described in plaintiff's petition. That some time during the fall of 1915 plaintiff brought suit in the justice court of precinct No. 1, of Motley county, Tex., against the defendant, setting up a certain claim against the defendant, arising out of a fire alleged by plaintiff to have occurred after the issuance of the policy described in his petition and before

the 1st day of January, 1915. That at the time plaintiff brought said suit he had been duly notified that the defendant had canceled the policy and had same in its possession. That said suit proceeded to judgment in said justice court and the judgment therein was paid off by the defendant. That by reason thereof and by reason of all the facts herein stated plaintiff is now estopped from asserting that said policy of insurance was to continue to be in force after the 1st day of January, 1915. The cause was tried by the court without a jury, resulting in a judgment in favor of defendant in error in the sum of $1,580, with interest from the 15th day of December, 1915. The findings of fact and conclusions of law filed by the court upon request are as follows:

"(1) I find that on or about the 14th day of March, 1914, plaintiff made application for a policy of fire insurance covering his dwelling house and barn, or granary, at the solicitation of J. R. Meriwether, agent for the defendant, and at the same time plaintiff applied for a tornado policy covering the same buildings; that plaintiff executed two notes, one for an amount not shown by the evidence, in payment for the tornado policy, which was paid at maturity and another note for $89.90, which was executed in payment of fire policy dated the 14th day of March, 1914, falling due the 1st day of January, 1915; that in accordance with such application defendant company issued its policy covering said dwelling and granary, dated the ——— day of ———, 1915, to run for a period of three years, in consideration of said $89.90 note, and delivered the same to plaintiff in this case; that the amount on the house was $1,500, on the furniture, clothing, and contents of the house $300, and on the granary $300, besides some small amounts on the feed and fodder.

"(2) I find that on or about the 18th day of December, 1914, the plaintiff in this case suffered a loss by fire on the granary described in the said policy, which is called by the witness in this case the barn, but I find that it is the same building as covered by the policy and described as a granary. It was totally destroyed. Plaintiff notified defendant, through its agent, Meriwether, of this fire, and thereafter, about the latter part of December, 1914, Meriwether appeared at plaintiff's place with an adjuster named Buckalew, who investigated the fire and agreed with the plaintiff on an adjustment of the damage at the sum of $272.03, and gave plaintiff a written statement showing such adjustment was made by the adjuster. I find this written statement was afterwards turned over to Meriwether, agent of the defendant.

"(3) I find that the defendant company accepted the adjustment made by Buckalew, and some time in the winter of 1915, about January or February, 1915, issued its check in favor of the plaintiff, W. D. Clark, for the full amount of the adjustment agreement, $272.03, less the amount of $89.90, the amount of the note given by plaintiff to defendant as a premium for said fire policy, and sent said check to its agent, Meriwether, with instructions to deliver said check to plaintiff, and did not return said note.

"(4) I find at the time Meriwether received the check plaintiff had been arrested and had been convicted to serve a two-year term in the penitentiary on the charge of swindling, which had no connection whatever with this insurance or the fire above mentioned; that instead of delivering the check to plaintiff, or his wife, Meriwether returned the check to his company, the defendant herein, and advised that the plaintiff was in the penitentiary and that he could probably force a better settlement with plain-

tiff's wife who had been left alone, than to give her the check.

"(5) I find that defendant, upon receiving Meriwether's letter, directed him to make the best settlement with plaintiff's wife that he could, and in pursuance with said directions Meriwether some time in April, 1915, went to the home of the plaintiffs, where his wife resided with the plaintiff, and offered to pay her $25 as a full and complete settlement on what was owing on the granary loss. I find that, after considerable negotiations between Meriwether and plaintiff's wife, during which time Meriwether told her that her husband was already in the penitentiary, that he had evidence tending to show that her husband had burned the barn or granary in order to collect the insurance thereon, and that the company would not pay for the same without a lawsuit, and if they had to fight a lawsuit it might cause her husband to have to go to the penitentiary again, beside the cost, worry, and delay to her of a lawsuit; finally Meriwether offered to give her $75 if she would surrender the policy on the barn and other feed in full settlement of the loss; that plaintiff's wife thought there were two separate fire policies, one covering the house and one covering the granary, or barn, whereas there was in fact but one policy covering both buildings, and I find that she never intended to agree, and did not agree, to surrender the policy on the house, but did agree to surrender the policy on the barn; that Meriwether paid her the $75 then and there and as he left carried off both the tornado policy and the fire policy, and returned the same to his company, but he did not surrender the note that was given for the premium on the fire policy, which had been given in full statement for a three-year period, running from the 14th day of March to the 14th day of March, 1917, and that he did not tell plaintiff's wife that said fire policy would be canceled on said dwelling house. I find that as a fact Meriwether did not have any evidence whatever that the plaintiff had burned said granary, but made such statement to intimidate plaintiff's wife in making the settlement desired. I find that she did not know he had carried off the policy covering the house until after he had left the place.

"(6) That after such settlement had been made plaintiff's wife still claimed the balance due plaintiff on adjustment for the granary loss and about $107.50; that suit was brought therefor in the justice court of precinct No. 1 of Motley county against the defendant in the name of plaintiff, about June, 1915, in which a judgment for $125 was rendered for plaintiff against defendant; that such judgment was settled by compromise, defendant paying the plaintiff the sum of $90 in full satisfaction thereof.

"(7) I find that in the settlement that was effected between the defendant and the plaintiff of said judgment the fact that the premium note for $89.90 had been figured out of the adjustment agreement and thereby had been paid by the plaintiff was taken into consideration by both parties in arriving at a final adjustment and settlement of said justice court judgment.

"(8) I find that on or about the 15th day of December, 1915, plaintiff's dwelling house which was covered by said fire policy was entirely destroyed by fire without any fault on the part of plaintiff, the origin of which was unknown, and that the amount of liability incurred by defendant on account of the burning of said house was $1,500, and that the contents of the house covered by the $300 item on the furniture, clothing, bedding, etc., were destroyed to the value of $80.

"(9) I find said policy, as the same relates to said house and the contents thereof, had never been canceled, but was in full force and effect on the said 15th day of December, 1915, at the time of said fire, and that defendant had never given notice of its intention to cancel said

policy and had not tendered back to plaintiff any portion of the unearned premium which he had paid therefor.

"Conclusions of Law.

"(1) I find that as a matter of law the said fire policy remained in full force and effect and was in such force and effect at the day of the fire on December 15, 1915, and that the defendant was therefore indebted from and after said date to the plaintiff, in the sum of $1,580, and that plaintiff is entitled to interest on said sum from the 15th day of December, 1915, at the rate of 6 per cent. per annum.

"(2) I find that, although Meriwether secured possession of the fire policy in the manner described in the findings of fact herein, neither his actions or any actions thereafter taken by the defendant had the effect of canceling said policy, for the reason that the possession thereof was obtained by Meriwether through fraud and misrepresentations and no notice was given by him to plaintiff or to his wife that said policy would be canceled, and no offer was made to return the unearned premium which had been paid by plaintiff to defendant for said policy, nor was there any tender made of the note which defendant held against plaintiff, although the same had been settled in the process of settlement growing out of the granary fire."

Many of the assignments of error attack the findings of fact, and it is insisted that the evidence is not sufficient to support the findings. We deem it unnecessary to set out the testimony of the various witnesses, but after a careful reading of the statement of facts it is our opinion that every material fact found by the court is supported by sufficient evidence.

[1-3] The evidence shows that both Meriwether and Buckalew were the agents of appellant; that together they adjusted the loss and that Meriwether represented the appellant in the settlement of the justice court judgment. It is further shown that the appellant ratified the acts of its agents and accepted the benefits and cannot therefore deny the fact of their agency nor avoid the responsibility growing out of it. Mrs. Clark and the attorney for appellee testified to material statement made by these agents, and the admission of this evidence is the basis for several of the assignments. We think the evidence was all clearly admissible. A letter written by the attorneys of appellant was introduced in evidence for the purpose of proving that the premium note for $98.60 was deducted from the amount agreed to be due in the adjustment of the first loss. The letter written by appellant's attorneys for the purpose of proving this fact was also admissible. Railway Co. v. Sullivan, 157 S. W. 194; Logre v. Galveston Electric Co., 146 S. W. 304.

[4, 5] Appellant contends under several assignments that all evidence admitted for the purpose of showing that the premium note above mentioned was paid in the adjustment and settlement of the first loss was inadmissible, because there were no pleadings under which it could be properly introduced. Appellant set up as part of its defense the clause in the policy which provided that if

the premium note was not paid the policy should become null and void, and alleged that the note had never been paid. The burden was upon appellant to establish the truth of this allegation. It appears, however, that appellee assumed the burden of proving the payment of the note. Vernon's Sayles' Civil Statutes, art. 1829, provides that any fact pleaded by the defense that is not denied by the plaintiff shall be taken as confessed, but this article has been amended twice, and by the Act of 1915, p. 155, it is provided that it shall not be necessary for the plaintiff to deny any special matter of defense pleaded by the defendant, but the same shall be regarded as denied unless expressly admitted. Under the implied general denial appellee had the right to prove the payment of the note, if in fact it had been paid. By the provisions of the policy appellant could not cancel it without giving the required notice, nor could it be canceled without a tender of unearned premiums. Insurance Co. v. Mitchell, 164 S. W. 919; Polemanakos v. Austin Fire Insurance Co., 160 S. W. 1134, and authorities cited. It was not shown that any part of the premium paid upon the policy had ever been returned or tendered to appellee.

[6] The twentieth and twenty-second assignments of error attack the findings of the court upon the ground that there is no evidence to support the amount found to be due. We have reviewed the record on this point and find that the testimony of Mrs. Clark is clear and, we think, sufficient to support a judgment for even more than the amount rendered. Appellant did not set up as a defense the failure of appellee to make out and furnish proofs of loss. There was no evidence upon that question, and it is too late to raise it in this court.

We have not considered the questions in the brief in the order in which they are presented, and overrule all the assignments not disposed of by what has been said above.

The judgment is affirmed.