438

(No. 3695—)

HARLOW H. BELDING, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed May 12, 1943.*

CARNAHAN, SLUSSER & MITCHELL and GEORGE W. THOMA, for claimant.

GEORGE F. BARRETT, Attorney General; WILLIAM L. MORGAN, Assistant Attorney General, for respondent.

ECKERT, J.

On January 7, 1941, respondent accepted claimant's bid of $725.00 for the moving of a building located on the grounds of the Illinois State Training School for Boys, at St. Charles, Illinois. The bid was made pursuant to a written authorization of the Department of Public Works and Buildings which provided, among other things, that claimant "block and hold building at new location for foundation. Perform any necessary shoring and place building on foundation when ready."

Prior to March 1, 1941, claimant moved the building to the designated new location, blocking it with his equipment, which included 22 jack screws, two 70′ timbers, 14″ x 14″, and two truck-loads of blocking, consisting largely of 4′ timbers, 6″ x 6″ square. Following instructions of respondent, claimant set the building approximately three inches higher than the top of the foundation which the respondent was to build to receive the building.

Respondent failed, however, to provide the necessary foundation, and on April 4, 1941, claimant notified the respondent that on and after May 1, 1941, a charge of $12.00 per day would be made by claimant for the use of his equipment supporting the building. There were various confer-

ences, both before and after the notice of April 4th, between claimant and the officers of the State Training School for Boys. Claimant was repeatedly told by the officers that they were waiting for the necessary money to build the foundation.

On July 25, 1941, claimant directed a letter to Mr. W. T. Harman, Managing Officer of the School, calling attention to claimant's letter of April 4, 1941, and protesting against the failure of the respondent to build the foundation. Claimant also sent a carbon copy of the letter of July 25th to Rodney H. Brandon, Director of Public Welfare, asking that something be done so that claimant could get his equipment. On July 30, claimant was advised to come to the school, remove the equipment, and lower the building to the ground or on to blocks to be furnished by the respondent. This was subsequently done, the building being lowered on to temporary piers constructed by claimant from concrete blocks furnished by the respondent. To rest the building on these piers, claimant was required to lower it a distance of four and one-half feet, and to have ten men present to perform the operation.

Claimant seeks an award for the rental value of the equipment which supported the building, computed on the following basis:

| ITEM | RENTAL PER DAY |
|---|---|
| 22 Jack Screws at 25c each | $5.50 |
| 2 70 ft. timbers, 14" x 14"; 7 40 ft. timbers, 12" x 12";<br> 2 truck loads of blocking | 6.50 |
| | $12.00 |

for a period of one hundred days, or the sum of $1,200.00. A further claim is made for additional work and material furnished in the lowering of the building and the construction of the temporary cement piers, in the sum of $120.00, which claimant alleges does not include any charge for time and expense necessary to lower the building on to the foundation as originally contemplated, or for the removal of the equipment. It is not disputed that 25c per day is the usual and customary rental charge for use of jack screws of the size and kind which claimant used under the building; that the usual and customary rental charges for use of timbers of the size and kind used under the building is $6.50 a day; and that the charge of $120.00 for building the temporary piers and lowering the building upon them is the usual and customary charge for such services.

Under the terms of the agreement between the claimant and the respondent, claimant clearly had an obligation to move the building to a new location and to block and hold it in such position that respondent could construct the necessary foundation upon which it would ultimately rest. Respondent, in turn, had an obligation to build the foundation, whereupon claimant could complete the contract by lowering the building to the foundation. Although no specific time was provided for such construction by respondent, its acceptance of claimant's bid provided that time should be the essence of the acceptance, and that all work should commence forthwith and be completed not later than April 1st, 1941. The respondent was thus obligated to build the foundation within such time after claimant had moved the building, so that claimant could lower the building and remove his equipment before April 1st, 1941. Because of the respondent's failure to fulfill this obligation, claimant was unable to use his equipment for a stipulated period of one hundred days. The State is liable for the damages sustained by a contractor arising from unreasonable delay caused solely by the State and not through the fault of the contractor, nor attributable to his failure in protecting himself from the effects of delays which might reasonably have been foreseen. *The Strandberg Brothers Company* vs. *State,* 8 C. C. R. 87; *The Carson-Payson Company* vs. *State,* 8 C. C. R. 581.

A question arises, however, as to the proper measure of damages. In replevin suits involving the detention of property which has a usable value, the measure of damage is the reasonable net rental value thereof. *Cottrell* vs. *Gerson,* 296 Ill. App. 412; *National Contract Purchase Corp.* vs. *McCormick,* 264 Ill. App. 63. The same principle has been applied in many other cases. In *Sanitary District of Chicago* vs. *McMahon & Montgomery Company,* 110 Ill. App. 510, the measure of plaintiff's damages due to delay of defendant in obtaining the right-of-way upon which plaintiff was employed to construct a canal, was held to be the market rental value of dredges, tugs, and scows during the time plaintiff was deprived of their use. Where a contractor was engaged in excavation work for a drainage district, and the district erected a dam which caused water to back up, overflow, and damage the contractor's equipment and machinery, the proper measure of damages was held to be the rental value of the

machinery and equipment, and the damages incident to tying up of the men employed in the work of excavating. *Myers Construction Co.* vs. *Wood River D. & L. Dist.*, 221 Ill. App. 473. In the case of *Sipes* vs. *Barlow*, 197 Ill. App. 239, of which only an abstract of the decision appears in the reports, it was held, that in an action to recover for breach of a contract for moving houses, where defendant breached the contract by failing to build a foundation under the houses so that plaintiff could remove his moving tools, the measure of plaintiff's damages was the value of the use of the tools for the period plaintiff was deprived of their use.

The court is of the opinion that the proper measure of damages in this case is the usual, customary and reasonable rental charge for claimant's equipment while claimant was deprived of its use through the failure of the State to fulfill its obligation under the contract.

The court is of the opinion, however, that claimant's charge of $120.00 for the construction of temporary piers and the lowering of the building upon them is sustained by neither the law nor the evidence, and this part of the claim must be disallowed.

An award is therefore entered in favor of the claimant in the sum of $1,200.00.